UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                         Case No. 6:25-cr-00290

v.

NEDA JOUDEH,

    Defendant.

_____/

### DEFENDANT NEDA JOUDEH'S MOTION TO DISMISS THE INDICTMENT

The Defendant, Ms. Neda Joudeh ("Ms. Joudeh"), moves this Court to dismiss the Indictment pursuant to the First Amendment to the United States Constitution and Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure.

### Introduction

The Indictment charges one count under 18 U.S.C. § 875(c), based on a single Instagram comment: "I wish someone would in alive him." That comment, on its face, and viewed in its actual political and grammatical context, is not a true threat as a matter of constitutional law. It is protected political hyperbole under *Watts v. United States*, 394 U.S. 705 (1969), and not a serious expression of intent to commit unlawful violence under *Watts, Virginia v. Black*, 538 U.S. 343 (2003), *Counterman v. Colorado*, 600 U.S. 66 (2023), or Eleventh Circuit law.

1

**STATEMENT OF FACTS**

On June 21, 2025, the New York Times published an article about a law-school seminar paper, "National Constitutionalism," written by student Preston Damsky. *See* Richard Fausett, *A White Nationalist Wrote a Law School Paper Promoting Racist Views. It Won Him an Award*, N.Y Times (June 21, 2025), available at https://www.nytimes.com/2025/06/21/us/white-supremacist-university-of-florida-paper.html. *See also Search Warrant Affidavit*, attached hereto as Exhibit 1. Damsky was a student in a class taught by United States District Judge John L. Badalamenti at the University of Florida Levin College of Law in the fall of 2024. Ex. 1 at ¶ 6. Mr. Damsky's lamentable paper argued that the phrase "We the People" in the United States Constitution referred exclusively to white Americans. Ex. 1 at ¶ 7. He also proposed disenfranchising nonwhite citizens and included language which advocated "shoot-to-kill orders" for non-white migrants at the border. *Id.* Nevertheless, Judge Badalamenti awarded Damsky the highest grade in the class and the book prize for best student. *Id.* Mr. Damksy's "scholarship" and Judge Baldamenti's subsequent actions became the subject of widespread public attention and criticism. *Id.* at ¶¶ 8-9. Not surprisingly, Judge Badalamenti became the target of negative comments and received hateful telephone calls. *Id.* at ¶ 8.

2

On the day of the New York Times article, Qasim Rashid,[1] a prominent Muslim-American human rights lawyer and political commentator, posted about the article on another platform and then public Instagram account (quasimrashid).

> As Trump attacks students who dare speak up for basic justice for Palestine, a student at the University of Florida Law School named Preston Damsky wrote a paper arguing that the Constitution named Preston Damsky wrote a paper arguing that the Constitution only applies to white people & Jews and "non-whites should be 'abolished by any means necessary.'

> A Trump-nominated judge named John L. Badalamenti who teaches the class gave Damsky the highest grade and awarded him the Book prize.

> University of Florida Law School defended the decision as 'free speech.'

Id. at ¶ 9. Quasim's post referenced three male individuals: (1) President Donald Trump; (2) Judge Badalamenti; and (3) Preston Damsky. *Id.* Instagram users began commenting on the post. *Id.* at ¶ 10.

On her Instagram account (falasteen8090), Ms. Joudeh, responded with the statement "I wish someone would in alive (sic) him." *Id.* at ¶ 11. The affidavit further notes that Ms. Joudeh's Instagram account profile picture states "STOP THE GENOCIDE." *Id.* That was it.

---

[1] According to his biography, Mr. Qasim Rashid's work has additionally been published in TIME, the New York Times, the Washington Post, NPR, and USA Today. He publishes a daily Substack focused on human rights issues titled "Let's Address This with Qasim Rashid." *See* Interfaith America, Org, *Quasim Rashid, Executive Director* (2026), available at https://www.interfaithamerica.org/people/qasim-rashid.

Although Ms. Joudeh's post did not identify any individual, Judge Badalamenti personally contacted the United States Marshals Service ("USMS") on June 22, 2025. *Ex.* 1 at ¶ 6. The USMS responded by assigning a Protective Intelligence Investigator whose "primary duty is investigating and mitigating all threats against federal judges in the Middle District of Florida." *Id.* at ¶ 2.

USMS investigators visited Ms. Joudeh's home within approximately one week of the post. *Id.* ¶ 15. She agreed to be interviewed with the consent of her attorney. *Id.* During the interview, Ms. Joudeh explained that the post was made out of anger but "[she] had no intentions of acting on them." She acknowledged that the phrase "un alive" rather than "in alive" was the intended statement. *Id.* ¶ 15.

Regarding Judge Badalamenti's reaction to the post, the search warrant affidavit stated the following:

> United States District Court Judge, John L Badalmenti, perceived the Instagram comment from falasteen8090, "I wish someone would in alive him" as serious direct threat against him. Judge Badalamenti and his family are Jewish and concerned that the comment from Falasteen8090 was also partially motivated by antisemitism.

*Id.*

There are no public records identifying Judge Badalamenti and his family as Jewish. Furthermore, there is no evidence demonstrating that Ms. Joudeh had knowledge of or communications with or about Judge Badalamenti prior to Rashid's Instagram post. Ms. Joudeh's lack of knowledge of Judge Badalamenti, of course, extends to his professed Jewish identity.

4

On October 29, 2025, the Government charged Ms. Joudeh with the Transmission of an Interstate Threat to Injure in violation of 18 U.S.C. § 875(c). Doc. 1. The Indictment alleges only that Ms. Joudeh:

> did knowingly transmit in interstate and foreign commerce a communication containing a threat to injure or kill another person, that is an online comment that included the statement. "I wish someone would in alive him," with the intent to communicate a true threat of violence and with the recklessness as to whether the communication would be viewed as a true threat of violence.

*Id.* at 1.

The Indictment does not name Judge Badalamenti as the victim. It charges only a threat to "another person." Doc. 1. Concerning the affidavits assertion that "Judge Badalamenti became the target of negative comments on Instagram and received hateful telephone calls," Ex. 1 at ¶ 8, defense counsel has been unable to identify any federal prosecution arising from those calls or from other comments online made in response to the article or similar circumstances.

Ms. Joudeh's comment used no first-person agency ("I will") and named no individual. Couched as a wish, it specified no time, place, method, etc., and was made in the context of a vigorous public debate.

Furthermore, Ms. Joudeh's use of the pronoun "him" was facially ambiguous: the originating post referenced at least three named males, and nothing in Ms. Joudeh's comment identified which individual, if any, the pronoun was meant to reference. Ms. Joudeh deleted the comment herself after speaking to the US Marshalls who came to her home.

## CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned has consulted with the Government who opposes the requested relief.

## MEMORANDUM OF LAW

As this memorandum establishes, the charge against Ms. Joudeh must be dismissed based on two separate grounds. First, the Indictment violates Ms. Joudeh's constitutionally protected right to Free Speech under the First Amendment. Second, the Indictment fails to state an offense pursuant to Rule 12(b)(3)(B)(v), of the Federal Rules of Criminal Procedure.

### I.    THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE CHARGED COMMENT IS PROTECTED POLITICAL SPEECH UNDER THE FIRST AMENDMENT, NOT A TRUE THREAT.

A district court may dismiss an indictment before trial if the issue can be decided entirely as a matter of law without a trial on the merits. Fed. R. Crim. P. 12(b)(1). Whether speech is a "true threat" or protected expression is, in the first instance, a question of constitutional law for the Court. In *Watts*, the Supreme Court construed the threat statute "with the commands of the First Amendment clearly in mind" and held, as a matter of law, that the defendant's statement was constitutionally protected "political hyperbole." 394 U.S. at 707–08.

Courts must approach speech-based liability "with extreme care," *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982). That is so, because "expression on public issues has always rested on the highest rung of the hierarchy

6

of First Amendment values," *Id.* at 913. This obligation of independent judicial judgment is heightened where, as here, the speech lies at the core of the First Amendment. *See, e.g, Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 508 (1984). Where the charged words themselves, quoted in the Indictment, cannot as a matter of law constitute a true threat, dismissal is required now, not after trial. *See Watts,* 394 U.S. at 708*; see also United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011) (where the Ninth Circuit reversed a threat conviction where one statement was "predictive in nature" and the other was an imperative directed at unidentified others, as a question of law).

At its inception, this country made a "profound national commitment" to uninhibited debate on public issues, including "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Watts,* 394 U.S. at 708.   The First Amendment shields speech even where it is crude, angry, or offensive. *Id.* at 707–08.   And the government may not restrict speech simply "because of its message, its ideas, its subject matter, or its content." *See Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (internal quotations omitted).

Because of our "profound national commitment" to uninhibited debate, most speech is constitutionally protected under the First Amendment. Most but not all since the First Amendment does not protect particularly dangerous speech. *See Chaplinsky v. New Hampshire,* 315 U.S. 568, 572 (1942); *Brandenburg v. Ohio*, 444 U.S. 447 (1969). Nevertheless, a statute which criminalizes a form of pure speech, "must be interpreted with the commands of the First Amendment

clearly in mind." *Watts*, 394 U.S. at 707. Thus, criminal prosecution of speech is permitted only within a narrow set of historically unprotected categories. . ." *Black*, 538 U.S. at 359.

**A.    "True Threats" are unequivocal, unconditional, and specific expressions of intention to inflict injury, political hyperbole are not true threats.**

A "true threat" falls in the category of the types of speech that are so dangerous that they are not protected by the First Amendment. *See id.* at 343. To the Government, Ms. Joudeh's Instagram comment "I wish someone would in alive him" constituted a "true threat" under 18 U.S.C. § 875(c). That statute states in pertinent part:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 875(c).

Although the statute does not specifically define what constitutes a "true threat," Supreme Court precedent does. "True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 349 (citing *Watts*, 394 U.S. 708). As the Supreme Court has explained, "[t]he 'true' in that term distinguishes" serious expressions of intent to harm "from jests, 'hyperbole,' or other statements that when taken in

context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023).

The determination of whether a statement is a "true threat depends on twofold inquiry; including 1) whether a reasonable person would perceive the statement as threatening, and 2) whether the speaker was subjectively aware of its threatening nature." *Id.* at 72-3. Mere negligence, that a reasonable person *should have* recognized the threatening character, is constitutionally insufficient. *Id.* at 80.

Consistent with this twofold inquiry, the Eleventh Circuit Pattern Jury Instruction state that a jury can find a defendant guilty of violating § 875(c) only if the government proves: "(1) the Defendant knowingly sent a message in interstate commerce containing a true threat to injure the person of another; and (2) the Defendant sent the message with the intent to communicate a true threat or with knowledge that it would be viewed as a true threat." Pattern Crim. Jury Instr. 11th Cir. OI O30.3 (2020). The Instructions define a "true threat" as "a serious threat – not idle talk, a careless remark, or something said jokingly – that is made under circumstances that would place a reasonable person in fear of being injured." *Id.* (cleaned up).

The government contends that Ms. Joudeh's Instagram comment "I wish someone would in alive him" was a "true threat" -- a "serious expression conveying that she meant to commit violence" against Judge Badalamenti. The Government's constitutional overreach is apparent. *United States v. Kelner* examined the

constitutional limits to a § 875(c) prosecution. 534 F.2d 1020, 1029 (2nd Cir. 1976),

Relying on *Watts*, the court concluded:

> The purpose and effect of the *Watts* constitutionally-limited definition of the term "threat" is to insure that only **unequivocal, unconditional and specific expressions of intention** immediately to inflict injury may be punished—only such threats, in short, as are of the same nature as those threats which are … properly punished every day under statutes prohibiting extortion, blackmail and assault without consideration of First Amendment issues.

*Id.* at 1027 (emphasis added)(internal citations and quotations omitted)

"I wish someone would in alive him" is not unequivocal, unconditional, and specific. It is "idle talk" and a "careless remark." It cannot be a true threat because it failed to convey "a gravity of purpose and likelihood of execution." *United States v. Crews*, 781 F.2d 826, 832 (10th Cir. 1986) ("A true threat "conveys a gravity of purpose and likelihood of execution so as to constitute speech beyond the pale of protected vehement, caustic unpleasantly sharp attacks on government and public officials"). It is not an expression to immediately inflict harm. Limited to a mere seven words, the comment is not specific and unequivocal but vague, if not indecipherable.

> **B.    *Watts* established that language in the political context is often abusive and inexact, and protected speech.**

The Supreme Court's decision in *Watts* establishes the protection of speech made in the political arena.  At a public rally in 1966 in Washington D.C., Robert Watts told a smaller breakout group the following:

> They always holler at us to get an education. And now I have already received my draft classification as 1—A and I have got to report for my

> physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J. They are not going to make me kill my black brothers.

*Watts*, 394 U.S. at 707. In reversing the Defendant's conviction, the Supreme Court maintained that Watts' political hyperbole did not constitute a true threat against the President. *Id.* at 708. "The language of the political arena, like the language used in labor disputes, is often vituperative, abusive, and inexact." *Id.*

Thus, Watts identified context as a critical factor in the true threat analysis. *See Watts,* 394 U.S. at 708; *Black*, 538 U.S. at 365–67.  Political speech about public officials occupies the highest tier of First Amendment protection. *See, e.g., Citizens United v. FEC*, 558 U.S. 310, 340 (2010).

Ms. Joudeh's comment was posted in a public thread responding to a prominent political commentator's post. Ms. Joudeh, a Palestinian American woman was commenting on a national political controversy involving race, the Constitution, and judicial conduct.  Such comments in political discussions, even ones invoking death, are not automatically true threats. *Watts*, 394 U.S. at 707–08; *see also Counterman*, 600 U.S. at 75–76 (subjective mens rea requirement protects "breathing space" for political and social commentary).

Like the defendant in *Watts*, Ms. Joudeh's statement was made during an emotional political or academic debate to a public audience. Statements, like Ms. Joudeh's comment, which are made in jest, [or] communicated to a large audience, or political in nature, or conditioned on an event that would never happen" are

11

statements more likely to be found to be protected speech rather than a true threat. *United States v. McDonald*, 444 Fed.Appx. 710 (4th Cir. 2011).

### C. The charged comment also fails the objective prong: it is third-party conditional political speech that a reasonable person would not understand as a serious expression of intent to inflict physical harm.

The statement, "I wish someone would in alive him" does not satisfy the objective component of the true-threat analysis. In determining whether speech constitutes a true threat, courts assess the totality of circumstances, including: (1) the content and specificity of the communication; whether the threat was communicated directly to the victim; the broader social and political context in which the speech occurred; and the existence of past threats. *See Watts*, 394 U.S. at 707–08; *Black*, 538 U.S. at 365–67; *United States v. Dinwiddie*, 76 F.3d 913, 925 (8th Cir. 1996); *See United States v. Alaboud*, 347 F.3d 1293, 1296-97 (11th Cir. 2003), overruled on other grounds by *Elonis*, 575 U.S. at 726,

Applying these factors, the charged statement falls outside the narrow category of speech that may be constitutionally criminalized.

*Content, Specificity, and Communication*

The content of the communication, as well as its lack of specify, demonstrates that the charged statement was not an objectively serious expression of an intent to commit violence. A vague public social media comment articulated in the format of a wish is incapable of expressing the speaker's own intent to inflict harm. *Watts* identified the conditional phrasing of the statement, "if they ever

12

make me," as central to its protected character.  394 U.S. at 708.  Ms. Joudeh's statement is even more attenuated from an expression of personal intent. By stating, "I wish someone would in alive him," she did not threaten to act herself, instead she expressed a mere wish.

The informal nature of Ms. Joudeh's communication reinforces that conclusion. The phrase "in alive" is an apparent typographical or transcription error requiring the government to infer the intended meaning. While the government may contend that the intended word is obvious, the fact remains that the charged statement was an informal, imprecisely worded social media comment—not the kind of deliberate, unequivocal communication that *Virginia v. Black* describes as a "serious expression of an intent to commit an act of unlawful violence." 538 U.S. at 359.

Taken together, the statement's grammar, its wish of future hypothetical action by an unidentified third party, and its informal, imprecise wording all weigh against treating it as a statement a reasonable person would view objectively as a serious threat.

Furthermore, Ms. Joudeh's statement contains no first-person expression of intent to commit violence. The speaker in *Watts* declared that "the first man I want to get in my sights is L.B.J.", yet the Supreme Court nevertheless determined that the statement constituted protected political hyperbole rather than a true threat. 394 U.S. at 708. Here, Ms. Joudeh said "I wish someone would"— an expression of hope that did not even rise to the level of conditional. Furthermore, it was not even

directed or communicated to Judge Badalmenti. It was not a declaration of her own willingness or intention to act.

The statement identified no specific individual, time, place, method, or weapon. It contains none of the markers that characterize an objectively serious threat. *Compare Alaboud*, 347 F.3d at 1297 (affirmed conviction where defendant repeatedly telephoned victim, identified victims by name, and made graphic, specific promises of violence); *see also United States v. Callahan*, 702 F.2d 964, 966 (11th Cir. 1983)(concluding that reasonable persons could construe the threat as a serious expression of an intent to kill because the letter was threatening on its face and included a date, time, and place on which the assassinations would occur).

The absence of both first-person agency and a specifically identified target is not incidental; it is central to the objective inquiry. Those deficiencies distinguish this case from those involving true threats and instead place the charged statement firmly within the realm of protected rhetorical expression. As discussed more fully in Argument II, the lack of any identified victim further precludes the Government from satisfying the constitutional requirements for prosecution.

Couched as a wish, Ms. Joudeh did not express her "intention to inflict evil, injury, or damage on another." *See Planned Parenthood of Columbia/Wilamete, Inc. v. Am. Coalition of Life Activists*, 290 F.3d 1058, 1075 (9th Cir. 2002)(defining trye threat as "an expression of an intention to inflict evil, injury, or damage on another"). As a wish, Ms. Joudeh's Instagram comment does not even rise to the level of the conditional statement uttered in Watts. Social and political context

14

*Context*

Context is perhaps the most critical factor in the true threat analysis. *See Watts*, 394 U.S. at 708; *Black*, 538 U.S. at 365–67. *See* Section I(B), supra. In determining whether Ms. Joudeh's Instagram comment constituted a "true threat," a court must not only look closely at the speech's content but also examine the context in which the statement was made. *See Alaboud*, 347 F.3d at 1297 (explaining that "[t]he fact-finder must look at the context in which the communication was made to determine if the communication would cause a reasonable person to construe it as a serious intention to inflict bodily harm"). In *Alaboud*, the Eleventh Circuit identified other contextual clues establishing a "true threat" including 1) the defendant's tone of voice, 2) his graphic promises of violence, and 3) multiple phone calls. None of those factors occurred in the instant case. *Id.*

Ms. Joudeh made her vague, wishful statement in an Instagram public discussion forum concerning a N.Y. Times article about an academic award to a white nationalist. The political or academic context of Ms. Joudeh's statement goes to the core of our First Amendment protections.

*Prior threats*

Communicating a passive, wishful desire to a public group not only indicates a lack of intent to commit violence but also fails to demonstrate that Ms. Joudeh

15

had the capability, or plan to commit violence. Ms. Joudeh had no prior contact or communication with Judge Badalamenti, had no knowledge of him, made no attempt to identify his location, and made no preparatory moves of any kind.  A momentary wish attributed to an unidentified third party buried in the comments on a public social media post, with no supporting conduct, does not constitute a credible "true threat."

Against the backdrop of *Watts*, the Government's theory of prosecution means that if Watts stated "I wish someone would in alive him" referring to LBJ, he would be subject to prosecution § 875(c). Conversely, if Ms. Joudeh stated "If they ever make me carry a rifle the first man I want to get in my sights is Judge Badalamenti" would not be subject to a § 875(c) prosecution as constitutionally protected speech.

In sum, the content and context of Ms. Joudeh's statement, including its less than conditional nature, her lack of prior threats to and lack of knowledge of Judge Badalamenti belie any argument that her Instagram comment was meant "to communicate a serious expression of an intent to commit an act of unlawful violence." *See Black*, 538 U.S. at 359–60. Indeed, the foregoing factors compel the conclusion that this comment, as a matter of law, is not a "true threat."  For these reasons, the Indictment must be dismissed.

## II     THIS COURT SHOULD DISMISS THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE

Federal Rule of Criminal Procedure 12(b) permits a defendant to move to dismiss an indictment or information if fails to invoke the court's jurisdiction or to

state an offense. Fed. R. Crim. P. 12(b)(2)-(3)(B).  A court ruling on a motion to dismiss may not look beyond the four corners of the indictment, nor may it properly dismiss an indictment for insufficient evidence. *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004); *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006).  Courts must treat the allegations in the indictment as true, and "may not dismiss an indictment on a determination of facts that should have been developed at trial."  *Sharpe*, 438 F.3d at 1263; *see also United States v. Sampson*, 371 U.S. 75, 78-79 (1962) (allegations in an indictment are treated as true when reviewing Rule 12(b) motions to dismiss).

The sufficiency of an indictment may be challenged not only on the basis that it fails to charge the essential elements of the statutory offense, but also on the ground that "the specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002); *see also United States v. Peter*, 310 F.3d 709, 714-15 (11th Cir. 2002); *United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013). Where an indictment contains "affirmative allegation of specific conduct that is not proscribed by the charging statute," the district court lacks jurisdiction over any subsequent proceedings.  *Peter*, 310 F.3d at 714, 715 (11th Cir. 2002); *Izurieta*, 710 F.3d at 1179 ("the failure to allege a crime in violation of the laws of the United States is a jurisdictional defect").

Although in the usual case whether a communication constitutes a true threat is for the trier of fact, "a few cases may be so clear that they can be resolved

17

as a matter of law." *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013)(" It is not unprecedented for a court to conclude that a communication does not legally qualify as a threat or a true threat. Indeed, in *Watts,* the Supreme Court held as a matter of law that the defendant's statement was merely "political hyperbole" that did not fit within the definition of the phrase "true 'threat.' ").

## A. Ms. Joudeh's Statement is not a True Threat based on its Content and Context

As noted above, Ms. Joudeh's Instagram statement does not constitute a "true threat," *See* Section I, *supra.* "I wish someone would in alive him" does not identify the method, time or place of the wish. And it doesn't even identify and is not directed to the "someone" who would carry out her wish. Furthermore, the undisputed facts establish that her comment was posted on Instagram in a forum discussing Mr. Damsky's book award at the University of Florida. Because it is couched as a wish, the comment itself does not indicate that Ms. Joudeh communicated a serious expression to inflict violence. Finally, as a wish, it doesn't even rise to the level of the conditional statement made in *Watts*. 394 U.S. at 707 ("If they ever make me carry a rifle the first man I want to get in my sights is L.B.J").

## B. Ms. Joudeh's Statement is not a "True Threat" since it fails to identify a particular individual

The Supreme Court in *Virginia v. Black* did not define a true threat merely as a "serious expression of intent to commit violence." It was more specific: a true threat is a statement "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a *particular*

18

*individual or group of individuals.*"   538 U.S. at 359. (emphasis added). Intimidation of the constitutionally proscribed kind is speech where "a speaker *directs a threat to a person or group of persons*" with the intent to place "the victim in fear of bodily harm or death." *Id.*  The words "particular" and "directs" are not surplusage.  They require an identifiable target.

The Indictment charges only a threat to "another person."  *See* Doc. 1. The statement does not identify the particular individual that the wish allegedly targeted.  On its face, the charged statement, "I wish someone would in alive him", contains a single pronoun: "him."   The post to which Ms. Joudeh responded referenced at least three named males: President Trump, Judge Badalamenti, and student Preston Damsky, and was posted by a fourth male, Qasim Rashid.  Nothing in the comment itself, or in the Indictment, resolves which of these four individuals, if any, the pronoun was meant to identify.

This is not a case like those where the target was obvious from the face of the statement. *Compare Alaboud*, 347 F.3d at 1297 (defendant made repeated calls and specified victims by name). When neither the charged statement nor the charging document identifies the "particular individual" that *Black* requires, the First Amendment is not satisfied.  The government must allege, and ultimately prove, that the communication was directed at a particular person.  It has not done so. done neither.

19

### C. "I wish someone would" is an exhortation directed at an unspecified third party, not a first-person expression of violent intent by the speaker, and the statute does not reach either.

Even setting aside the identification problem, the charged statement cannot constitute a true threat because it contains no first-person expression of intent by Ms. Joudeh to do anything violent to anyone. "True threats" are statements where the *speaker* means to communicate a serious expression of *the speaker's own* intent to commit an act of unlawful violence. *Black*, 538 U.S. at 359. A statement expressing a wish that some unspecified third party do harm is not, as a matter of First Amendment law, a threat by the speaker.

In *Bagdasarian*, 652 F.3d at 1113, the Ninth Circuit reversed a threat conviction where one statement was "predictive in nature" and the other was an imperative directed at unidentified others. The court held: "The threat statute does not criminalize predictions or exhortations to others to injure or kill." *Id.* at 1119. The court explained that a statement which "expresses the imperative that some unknown third party should take violent action" — rather than expressing the speaker's own intent — "cannot reasonably be taken to express his intent." *Id.* Although *Bagdasarian* arose under a different threat statute, 18 U.S.C. § 879(a)(3), its reasoning rests directly on *Black*'s definition of a true threat and is fully applicable here as persuasive authority.

The statement here, "I wish someone would in alive him", is grammatically and substantively a wish directed at an unspecified third party. It does not say "I will." It does not say "I am going to." It is, on its face, an expression of desire that

20

*someone else* act.   Other circuits have recognized this distinction in analogous contexts. *See New York ex rel. Spitzer v. Operation Rescue National*, 273 F.3d 184, 196 (2d Cir. 2001) ("a person who informs someone that he or she is in danger from a third party has not made a threat, even if the statement produces fear").

As previously noted, "a few cases may be so clear that they can be resolved as a matter of law." *Stock*, 728 F.3d at 298. This is one of those cases since the failure is not factual. The charged words, taken on their face, identify no particular individual and contain no first-person expression of violent intent by the defendant. Those are constitutional requirements that no amount of context or inference at trial can supply. In the end, a statement which does not express the speaker's own intent to commit violence or control over others to commit violence but instead expresses a wish for some hypothetical act by an unidentified third party cannot qualify as a "true threat." Indeed, such a wishful statement, in all its unintelligible glory cannot be a "serious expression of an intent to commit an act of unlawful violence." *Black*, 538 U.S. at 359.

## CONCLUSION

For the foregoing reasons, Ms. Joudeh requests that the Court dismiss the Indictment.

Respectfully submitted,

/s/        Sufia M. Khalid
Sufia M. Khalid
Deputy Director, Nat'l Security Criminal
Defense Center
Muslim Legal Fund of America
100 N. Central Expy, Suite 1010

Richardson, TX 75080
(972) 914-2507
Sufia.khalid@mlfa.org
Counsel for Defendant Neda Joudeh

And


/s/ Fritz Scheller
Fritz Scheller, Esquire
Florida Bar No.: 0183113
Fritz Scheller, P.L.
231 E. Colonial Drive
Orlando, Florida 32801
PH: (407) 792-1285
FAX: (407) 649-1657
fscheller@flusalaw.com
*Attorney for Defendant Neda Joudeh*

22

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel in this case

.

/s/ *Fritz Scheller*
Fritz Scheller
Florida Bar Number 183113
Fritz Scheller, P.L.
231 E. Colonial Drive
Orlando, Florida 32801
Telephone 407-792-1285
Facsimile 407-649-1657
Email: fscheller@flusalaw.com