# EXHIBIT 1

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the
### Middle District of Florida

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Information associated with the Instagram account associated<br>with the username "falasteen8090" stored at premises owned,<br>maintained, controlled or operated by Meta Platforms, Inc. | )<br>)<br>)<br>)     Case No.   2:25-mj-1202-TRR<br>)<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 875 | Interstate threat |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____*)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____     *Ronald Jay Lindbak*
                                                 *Applicant's  signature*

                                          Ron Lindbak, Deputy United States Marshal
                                                 *Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Videoconferene _____ *(specify reliable electronic means)*.

Date:  8/7/2025 _____                  _____
                                                            *Judge's signature*

City and state:   Orlando, FL                    TIMOTHY R. RICE, United States Magistrate Judge
                                                            *Printed name and title*

00104

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT "FALASTEEN8090" THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case.2:25-mj-1202-TRR **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Ron Lindbak, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in

00105

Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Deputy United States Marshal with the United States Marshals Service and have been since 2001. I have been the full time Protective Intelligence Investigator for the United States Marshals Service, Middle District of Florida since 2015. My primary duty is investigating and mitigating all threats against federal judges in the Middle District of Florida. I have investigated hundreds of threats throughout my 24-year career with numerous convictions. I have attended and graduated from the Criminal Investigator Training Program (CITP), Department of Homeland Security, Federal Law Enforcement Training Center, Glynco, Georgia. I have also attended and graduated from the Protective Investigations Training Program, Department of Justice, United States Marshals Service Training Academy.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 875 have been committed by Neda JOUDEH, through Instagram account "falasteen8090". There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, and fruits of these crimes further described in Attachment B.

2

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, a "district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.      On June 22, 2025, United States District Court Judge, John L. Badalamenti contacted the United States Marshals Service (USMS) for the Middle District of Florida regarding a threat stemming from reaction to a June 21, 2025, New York Times article called, "A White Nationalist Wrote a Law School Paper Promoting Racist Views, It won Him an Award." Judge Badalamenti is an adjunct professor at the University of Florida and taught a seminar class in the fall semester of 2024 on the legal theory "originalism."

7.      The New York Times article focuses on a capstone paper a student wrote for Judge Badalamenti's class. The student's paper, according to the article, argued that the framers of the Constitution intended the phrase "We the People" to refer exclusively to white people. As such, in the paper, the student argued for the removal of voting rights protections for nonwhite people and issuance of shoot-to-kill orders against "criminal infiltrators at the border." The student obtained the "book award," which the article describes as meaning the student was designated the best student in the class and was awarded to the student by Judge Badalamenti.

3

00107

8.      Judge Badalamenti became the target of negative comments on Instagram and received hateful telephone calls.

9.      The same day that the New York Times published the article, Instagram user "qasimrashid" ("Qasim") posted about the article on Instagram. Qasim's Instagram post shared a screenshot of a post he made on another platform that said:

> As Trump attacks students who dare speak up for basic justice for Palestine, a student at the University of Florida Law School named Preston Damsky wrote a paper arguing that the Constitution only applies to white people & Jews and non-whites should be "abolished by any means necessary."
>
> A Trump-nominated judge named John L. Badalamenti who teaches the class gave Damsky the highest grade and awarded him the Book prize.
>
> University of Florida Law School defended the decision as "free speech."

10.      Instagram users then began commenting on Qasim's post.

11.      One of the comments on Qasim's post was from Instagram user "falasteen8090" ("Falasteen8090"). Falasteen8090's Instagram profile picture is white text that says, "STOP THE GENOCIDE," against a red background. Falasteen8090 commented on Qasim's post, "I wish someone would in alive him." USMS and Judge Badalamenti suspected that Falsteen8090 meant to say "unalive him," meaning "kill him." Falasteen8090's comment has since been deleted.

12.      On June 25, 2025, the United States Marshals Service, Middle District of Florida, Tampa Office applied for a grand jury subpoena on Instagram for

4

subscriber information for Falasteen8090. The results identified the subscriber with
an email of joudehn1@gmail.com.

13.     On June 26, 2025, the United States Marshals Service, Middle District
of Florida, Tampa Office applied for a grand jury subpoena on Google LLC /
Google Fiber for the physical address to joudehn1@gmail.com. The results identified
a physical address of 1109 N Interstate 35, Austin, Texas.

14.     On June 27, 2025, Deputy United States Marshals in Austin Texas
were able to locate Neda Joudeh, at 1109 N Interstate Highway 35, Unit 1118,
Austin, Texas.

15.     JOUDEH was interviewed with the consent of her attorney whom she
was on the phone when USMS arrived. JOUDEH confessed to authoring the
Instagram post in question on her account, Falasteen8090. She stated she had made
the post out of anger but had no intentions of acting on them. She further stated that
the post she authored was supposed to say "un alive" him and not "in alive." The
"him" she was referring to in the post was Judge Badalamenti. At no point in the
interview with USMS, who interviewed JOUDEH for a threat towards a federal
judge, did JOUDEH mention that she meant "him" as being anyone else.

16.     United States District Court Judge, John L. Badalamenti, perceived the
Instagram comment from falasteen8090, "I wish someone would in alive him" as
serious direct threat against him. Judge Badalamenti and his family are Jewish and
concerned that the comment from Falasteen8090 was also partially motivated by
antisemitism.

5

00109

## BACKGROUND CONCERNING INSTAGRAM [1]

17.    Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

18.    Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

19.    Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy," https://privacycenter.instagram.com/policy/; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

00110

about devices and web browsers used to access an account, and session times and durations.

20.    Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

21.    Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

22.    Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to

7

00111

hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

23.    Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

24.    Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

25.    One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

8

26.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

27.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

28.     Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

29.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders

9

00113

can't view their disappearing messages after they are sent but do have access to each

message's status, which indicates whether it was delivered, opened, or replayed, and

if the recipient took a screenshot. Instagram Direct also enables users to video chat

with each other directly or in groups.

30.    Instagram offers services such as Instagram Checkout and Facebook

Pay for users to make purchases, donate money, and conduct other financial

transactions within the Instagram platform as well as on Facebook and other

associated websites and apps. Instagram collects and retains payment information,

billing records, and transactional and other information when these services are

utilized.

31.    Instagram has a search function which allows users to search for

accounts by username, user activity by location, and user activity by hashtag.

Hashtags, which are topical words or phrases preceded by a hash sign (#), can be

added to posts to make them more easily searchable and can be "followed" to

generate related updates from Instagram. Meta retains records of a user's search

history and followed hashtags.

32.    Meta collects and retains location information relating to the use of an

Instagram account, including user-entered location tags and location information

used by Meta to personalize and target advertisements.

33.    Meta uses information it gathers from its platforms and other sources

about the demographics, interests, actions, and connections of its users to select and

personalize ads, offers, and other sponsored content. Meta maintains related records

10

for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

34.     In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contact between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

35.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

36.     In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

37.     For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation.

11

Based on my training and experience, instant messages, voice messages, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

38.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, messaging logs, photos, and videos and the data associated with the foregoing, such as date and time may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

39.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

12

00116

40. Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

41. Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram, including for the account "falasteen8090". In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED META

42. I seek a warrant to require Meta to search the information described in Attachment A and disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Attachments B. Upon receipt of the information, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

13

## CONCLUSION

43.    Based on the forgoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

44.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Ron Lindbak
Deputy United States Marshal
United States Marshals Service

Affidavit submitted by email and attested
to me as true and accurate by videoconference
consistent with Fed. R. Crim. P. 4.1 and 41(d)(3)
before me this __7th__ day of August 2025.

TIMOTHY R. RICE
United States Magistrate Judge

14

00118