UNITED STATES OF AMERICA,

v.                                              CASE NO. 6:25-cr-290-CEM-DCI

NEDA JOUDEH,

      Defendant.

_____/

## DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF HER MOTION TO DISMISS THE INDICTMENT

Defendant Neda Joudeh submits this supplemental brief following the July 20, 2026 hearing on her Motion to Dismiss (Doc. 32), in further support of that Motion. It answers the threshold question the Court raised at the hearing about its authority to resolve this Motion before trial, and then addresses the two independent grounds for dismissal, each sufficient by itself and neither requiring the resolution of any disputed fact.

Section I shows that the Court's authority to dismiss is settled: Rule 12(b)(3)(B)(v) provides for a pretrial motion attacking an indictment that pleads only conduct outside the charging statute; the Eleventh Circuit's decisions in *Peter* and *Izurieta* confirm that such an indictment charges no offense; and *Stock*, *Alkhabaz*, and *Watts* confirm that a § 875(c) threat charge may be resolved as a matter of law. Section II shows that the Indictment fails to state an offense: it identifies no "particular individual" and pleads none of the context the Government's own

1

authority requires. Section III shows, independently, that the charged words are protected political speech, a question of law under Rule 12(b)(1). Section IV shows that the Court may accept the Government's own reading of the words, *arguendo*, and still dismiss. Section V shows that the Government's Response confirms each ground.

## ARGUMENT

**I.   THE COURT MAY RESOLVE THIS MOTION BEFORE TRIAL, BECAUSE AN INDICTMENT THAT PLEADS ONLY CONDUCT OUTSIDE § 875(c) CHARGES NO OFFENSE.**

The Court asked at the hearing whether it may resolve this Motion now, or whether the true-threat question belongs to a jury. It may, and on this record it should. Rule 12(b)(3)(B)(v) expressly authorizes a pretrial motion to dismiss for failure to state an offense, and the sufficiency of an indictment is tested on its face. Where the specific facts a charging document pleads fall beyond the scope of the statute as a matter of law, dismissal is required, and § 875(c) decisions confirm that a threat charge is among those a court may resolve on the charging papers.

**A. An indictment fails to state an offense when the specific facts it pleads fall beyond the scope of the statute, and testing that is not "summary judgment."**

An indictment may be attacked under Rule 12(b)(3)(B)(v) in two independent ways: for omitting an element, or because "the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir.

2002). The Government's own lead authority applies exactly that test to § 875(c). In *United States v. Stock*, 728 F.3d 287 (3d Cir. 2013), the Third Circuit reviewed a pretrial Rule 12(b)(3)(B) motion arguing that "the statements alleged in the indictment are not 'threats' and thus fall beyond the scope of 18 U.S.C. § 875(c)," and held that its "precedent has recognized such attacks as an appropriate, alternative way in which to challenge the sufficiency of an indictment." *Id.* at 291-92.

The Eleventh Circuit applies the same principle. In *United States v. Peter*, 310 F.3d 709 (11th Cir. 2002), the court held that where "the Government affirmatively alleged a specific course of conduct that is outside the reach of the" charging statute, the defendant's "innocence of the charged offense appears from the very allegations made in the" charging document, "not from the omission of an allegation requisite to liability." *Id.* at 715. And in *United States v. Izurieta*, 710 F.3d 1176 (11th Cir. 2013), the court vacated convictions because the indictment failed to charge conduct the statute reached. *Id.* at 1179. The rule these cases state is dispositive here: an indictment that pleads only conduct the statute does not reach must be dismissed, and Rule 12(b)(3)(B)(v) is the vehicle the Rules provide for raising that defect before trial.

This is not the "criminal summary judgment" that *United States v. Salman*, 378 F.3d 1266 (11th Cir. 2004), forbids. *Salman* reversed a dismissal because the district court went *outside* the charging document and "in effect granted summary

3

judgment in favor of the defendant" by "ruling on the merits of the charges." *Id.* at 1268. The vice in *Salman* was a pretrial weighing of the *evidence* the Government would offer to prove a properly pleaded charge. Ms. Joudeh asks for nothing of the kind. She does not ask the Court to weigh evidence or predict what the Government could prove; she asks whether the words the Indictment itself quotes, accepted as entirely true, fall within § 875(c) at all. *Salman*'s own rule supplies the test: "[t]he sufficiency of a criminal indictment is determined from its face." *Id.* (quoting *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)). That face-of-the-indictment examination, which accepts every allegation as true and asks whether the pleaded facts state an offense, is precisely, and only, what Ms. Joudeh asks the Court to perform. See *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011).

**B. Courts applying this principle to § 875(c) have resolved threat charges on the charging papers alone.**

The authority to dismiss comes from the Eleventh Circuit cases above; Ms. Joudeh does not ask the Court to adopt the law of any other circuit. But because the Eleventh Circuit has not yet applied that principle to a § 875(c) charge, decisions that have done so are useful as persuasive illustration, and they confirm that such a charge may be resolved on the face of the indictment. The clearest example is *United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997). There, a grand jury indicted a University of Michigan student under § 875(c) for emails describing sexual violence, communications the Government thought serious enough that the defendant was

4

initially detained as a danger to the community. The district court dismissed the indictment before trial, and no trial was ever held. The Sixth Circuit affirmed, holding on statutory grounds that "the indictment failed, as a matter of law, to allege violations of Section 875(c)," and expressly "declin[ing] to address the First Amendment issues." *Id.* at 1495-96. That is a § 875(c) indictment resolved, and its dismissal affirmed, on the charging papers alone.

*Stock*, the Government's own lead case, litigated on a pretrial Rule 12(b)(3)(B) motion, confirms that this power exists. Although *Stock* noted that "[i]n the usual case, whether a communication constitutes a threat or a true threat is a matter to be decided by the trier of fact," it recognized that "a court may conclude that a communication does not constitute a threat as a matter of law in certain cases." 728 F.3d at 298. The Government cannot rest its Response on *Stock* and simultaneously deny that this Court possesses the power *Stock* recognizes.

**C. *Watts*'s posture strengthens, not weakens, the case for pretrial resolution.**

The Court observed at the hearing that *Watts v. United States*, 394 U.S. 705 (1969) (per curiam), was decided after a trial. That is correct. Robert Watts was tried to a jury; his Rule 29 motion was denied; the jury convicted; and the D.C. Circuit affirmed. The Supreme Court reversed and "remanded with instructions that it be returned to the District Court for entry of a judgment of acquittal." *Id.* at 708.

Understood precisely, *Watts* establishes two things, and its posture takes away neither.

First, *Watts* settles *who* answers the question when the answer is clear: a court, as a matter of law, not a jury. The Court did not order a new trial or hold that a rational jury could go either way. It directed an acquittal, removing the true-threat question from any jury, because the statute "must be interpreted with the commands of the First Amendment clearly in mind" and the statement was, in law, "political hyperbole" rather than a "true threat." *Id.* at 707-08. That the question happened to arise on a Rule 29 motion shows only *where* in that case it was raised (Watts filed no pretrial motion), not that a trial is a prerequisite to answering it. The § 875(c) decisions in Part I.B supply what *Watts*'s posture does not: *Alkhabaz* answered the identical question on a pretrial motion with no trial.

Second, the one respect in which this case differs from *Watts* cuts in Ms. Joudeh's favor. In *Watts* there was a developed trial record of context (the rally, the crowd's laughter, the expressly conditional framing), and the Government still lost as a matter of law. Here the Government has pleaded no context at all, and it insists the Court may consider none: "[o]nly the facts asserted in the Indictment are relevant," Doc. 41 at 1 n.1, and context "should not be viewed because [it is] not contained within the four corners of the Indictment," *id.* at 4. Under *Stock*, the context on which criminality depends must appear in the indictment, 728 F.3d at

303, so the Court may not deny dismissal in reliance on context the grand jury never charged. Sending this case to trial would not give the Court additional charged facts to weigh; it would give the Government an opportunity to prove context it never pleaded, the exact move *Stock* forecloses.

### D. The Government's own authority concedes the power exists.

The Government's own district-court authority acknowledges the power it asks the Court to doubt. *United States v. Demeo*, No. 2:26-cr-24-SPC-DNF, 2026 WL 1077630 (M.D. Fla. Apr. 21, 2026), denied dismissal, but only because, on the face of that indictment, a reasonable person could interpret the charged comments as threatening. *Id.* at *3; see Doc. 41 at 4-5. The premise of that ruling is that a charge whose words could not be so read must be dismissed; the only question is whether this is that case. *Demeo*'s nineteen separate and repeated counts of first-person threats to "kill," "slaughter," and "eradicate" identified groups were not. Seven words the Government itself calls "incomprehensible," Doc. 41 at 11, cast as a third-person wish that names no actor, no act, no method, and no identifiable target, are its paradigm.

## II. THE INDICTMENT FAILS TO STATE AN OFFENSE UNDER RULE 12(b)(3)(B)(v).

Two independent features of this Indictment place the charged conduct outside § 875(c): it identifies no particular individual, and it pleads none of the context the Government's own authority requires a threat indictment to supply.

**A. The Indictment identifies no "particular individual," as *Black* requires.**

*Virginia v. Black* limits true threats to statements directed "to a particular individual or group of individuals," where "a speaker directs a threat" with intent to place "the victim in fear." 538 U.S. 343, 359-60 (2003) (emphasis added). The Indictment charges a threat to "another person" and identifies no one. (Doc. 1.) The lone pronoun "him" could refer to any of at least three men named in the post to which the comment replied: a sitting President, a sitting federal judge, and a private citizen. The post itself was made by a fourth. The Government's answer proves the defect: it concedes that "[a]t this stage . . . that does not matter" and that "him" merely "suggests" a target. Doc. 41 at 12. A pronoun that "suggests" a target does not identify a "particular" one. And at the four-corners stage, the only stage the Government says the Court may occupy (Doc. 41 at 1 n.1, 4), the target's identity is the one thing that could matter, because the four corners contain nothing else. An indictment pleading a statement whose target no reasonable reader could identify from the communication itself pleads conduct outside § 875(c). *Panarella*, 277 F.3d at 685; *Peter*, 310 F.3d at 715.

**B. The Indictment pleads none of the context its own framework requires.**

***1.     Stock requires the Government to plead context; its own concessions show it did not.***

*Stock* confronted precisely this tension and resolved it against the Government:

> While a court's review of a motion to dismiss under Rule 12(b)(3)(B) is limited to a consideration of the facts alleged in the indictment, . . . the court's determination of whether a statement constitutes a threat under § 875(c) is based on the context and totality of the communication. . . . Thus, "although the Government is not required to set forth its entire case in the indictment," . . . it is at least "incumbent on the Government to make that context clear" in an indictment charging a violation of a threat statute.

728 F.3d at 303 (quoting *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001)). The Government's Response confirms it has not done so: it tells the Court that context "should not be viewed because [it is] not contained within the four corners of the Indictment," Doc. 41 at 4, while conceding that the statement "can be a true threat, depending on the context surrounding it," *id.* at 12. *Stock* supplies the only lawful resolution: the Government must plead the context, and the remedy for an indictment that omits the context on which criminality depends is dismissal, not a trial at which the Government supplies what the grand jury did not.

### 2. *The indictments in the Government's own cases show what pleaded context looks like; this Indictment has none of it.*

The very indictments the Government offers as sufficient illustrate what is missing here. In *Stock*, the indictment quoted five sentences of the defendant's own words: his own truck, a three-hour search for the victim the opinion identifies as "J.K.P.," a specific method and location, and first-person statements of intent. 728 F.3d at 288-89. In *Demeo*, the case on which the Government leans hardest for the view that context need not be pleaded (Doc. 41 at 4-5), the indictment set out nineteen counts, each tied to a specific comment, date, and comment ID, and each

stated in the defendant's own first-person terms (for example, threats to "kill and eradicate" and to "slaughter, eradicate, and kill" identified groups). 2026 WL 1077630, at *1-2. That first-person, targeted, specific pleading is "precisely" why the court could hold, on the face of that indictment alone, that a reasonable person could read the comments as threatening. *Id.* at *3. So too in *Giancola*: "I would shoot them dead," first person, the speaker naming himself as the actor. (Doc. 41 at 5.)

Every indictment the Government cites as sufficient thus pleaded a first-person expression of the speaker's own intent to act, aimed at an identified target, in the speaker's own words. This Indictment pleads none of that: seven words, no named or described target, no first-person statement that Ms. Joudeh herself would act, no method, and no date or place beyond "on or about" and "the Middle District of Florida, and elsewhere." (Doc. 1.) Measured against the Government's own models, it supplies none of the context *Stock* requires.

### 3. *The Government's Stock quotation omits the sentence that limits it.*

The Government quotes *Stock* for the proposition that "Stock has offered no reason . . . why a wish [could] not constitute a threat in the right context." Doc. 41 at 9 (citing 728 F.3d at 301). The very next sentence, which the Response omits, supplies the condition:

> Applying Stock's requested rule would be especially inappropriate here because, in the context of the first and second sentences, a reasonable jury could find that Stock did not simply wish that J.K.P. would suffer harm, but that he was prepared to commit the act himself.

728 F.3d at 301 (emphasis added). *Stock* held that a wish may be a threat where the indictment *also* pleads that the speaker was prepared to act himself, the "right context" it described. *Stock* frames the broader authority on wishes as "divided," *id.*, but it did not hold that a bare wish suffices; it resolved the question through the self-identification factor discussed next, the factor this Indictment fails. Nothing in this Indictment alleges, or on these seven words could allege, that Ms. Joudeh was prepared to do anything.

### 4. Stock adopts the factor the Response ignores, and Bagdasarian confirms it.

*Stock* states the factor that controls this case: "a significant factor in evaluating whether a communication is a true threat is whether a speaker identifies himself as the person who will inflict injury on another or whether the speaker merely suggests that harm will befall another by someone's hand." 728 F.3d at 301 (citing *United States v. Kosma*, 951 F.2d 549, 554 (3d Cir. 1991)). "I wish someone would ___ him" does not identify the speaker as the one who will act; it "merely suggests that harm will befall another by someone's hand," the protected side of that line. The Ninth Circuit reached the identical conclusion in *United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011) (construing 18 U.S.C. § 879 and applying *Black*'s definition of a true threat): a statement that "expresses the imperative that some unknown third party should take violent action," *id.* at 1122, "conveys no explicit or implicit threat on the part of [the speaker] that he himself will kill or injure" the

target, because the threat statute "does not criminalize predictions or exhortations to others to injure or kill," *id.* at 1119. The Response does not address *Bagdasarian*.

**5.    *"I wish someone would" is not a conditional threat, and the Government's conditional-threat cases each turn on an element missing here.***

The Response asserts that "I wish someone would . . ." is "conditional because it expresses a desire for reality to be different." Doc. 41 at 9. That is not what a condition is. A conditional threat has the form *if X, then I will Y*, in which the speaker states what he will do and attaches a contingency, as in *Watts*: "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." 394 U.S. at 706. A wish has no antecedent and no consequent; it does not even reach *Watts*'s conditional structure. The Government's own quotation of *United States v. Baker*, 514 F. Supp. 3d 1369, 1381 (N.D. Fla. 2021), confirms the point: "Most threats are conditional; . . . the threatener hopes that they will accomplish [something], so that he won't have to carry out the threats." That reasoning presupposes a speaker who can and will carry out the threat, which is why the condition has coercive force. And the Response's own *United States v. C.S.*, 968 F.3d 237 (3d Cir. 2020), confirms rather than rebuts this: the juvenile there said, in the first person, "if Christians trigger me then I go at the church," after previously bringing a gun to school: first-person agency *plus* prior armed conduct, reviewed after trial. *Id.* at 245; Doc. 41 at 9-10.

Strip out first-person agency and prior conduct, and none of the Government's conditional-threat cases reaches a bare wish.

### 6. *Stock is a statutory case and does not reach the First Amendment.*

*Stock* expressly declined the constitutional question; the defendant "abandoned that issue." 728 F.3d at 289 n.3. *Stock* holds only that "the definition of the word 'threat' and the definition of the phrase 'true threat' are not co-extensive," meaning a statement may be a statutory "threat" and still be constitutionally protected speech. *Id.* at 293-94. The Government's principal authority thus does not reach the independent First Amendment ground addressed next.

## III. INDEPENDENTLY, THE CHARGED WORDS ARE PROTECTED POLITICAL SPEECH, A QUESTION OF LAW UNDER RULE 12(b)(1).

Even if the seven words could, in the abstract, state a statutory "threat," the First Amendment independently bars this prosecution, because the charged speech is protected political hyperbole. Ms. Joudeh's Motion briefed that ground in full, Doc. 32 at 6-16, and she does not repeat it here; two points bear on the Court's authority to resolve it now.

First, the constitutional ground converges with the statutory one. Rule 12(b)(1) permits the Court to decide "any defense . . . that [it] can determine without a trial on the merits," and whether speech is protected expression is, in the first instance, a question of law. Section 875(c) reaches only true threats; the Supreme Court has narrowly construed it, in *Watts*, *Black*, and *Counterman v. Colorado*, 600

U.S. 66 (2023), to exclude political hyperbole. Speech that is protected as a matter of law is therefore "a specific course of conduct . . . outside the reach of" the statute, exactly as in *Peter*, 310 F.3d at 715. If the charged words are protected political speech, dismissal follows under Rule 12(b)(3)(B)(v) and Rule 12(b)(1) alike.

Second, the Court's duty here is heightened, not diminished, because speech is at stake. "[E]xpression on public issues has always rested on the highest rung of the hierarchy of First Amendment values," *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982), and a court must "make an independent examination of the whole record" to ensure liability does not intrude on protected expression, *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984). Here the "whole record" the Government permits is the Indictment itself (Doc. 41 at 1 n.1, 4), and the seven words it charges carry the hallmarks of hyperbole on their face: wish-form ("I wish"), third-person ("someone"), naming no act, no method, no occasion, and no person. Ms. Joudeh's comment has none of the three features that made *Watts* even arguably close: no first-person intent to act, no named target, and no weapon or method. If Robert Watts's statement was political hyperbole as a matter of law, a bare, third-person wish naming no one cannot be less protected. Nor does *Counterman*'s recklessness holding move the question to a jury: subjective mens rea matters only if there is an objectively cognizable true threat to be reckless about, and where the charged words cannot objectively be a true threat, that inquiry never arises.

## IV. THE COURT MAY ACCEPT THE GOVERNMENT'S OWN READING AND STILL DISMISS.

The Government's strongest procedural argument is that the meaning of "in alive" is disputed and disputes are for juries. The Court need not resolve that dispute, because Ms. Joudeh prevails even if it is resolved entirely against her. The Government contends "in alive" is a rendering of "unalive," meaning "kill," so the statement reads "I wish someone would kill him." Doc. 41 at 11-12. The Court may accept that reading, just as it accepts every allegation "as entirely true." *Bergrin*, 650 F.3d at 268. So read, the statement remains a wish that some unidentified third party act. It contains no first-person expression of intent, the "significant factor" under *Stock*, 728 F.3d at 301; it "conveys no . . . threat" by the speaker herself, *Bagdasarian*, 652 F.3d at 1119; and it is the very "imagining, wishing or hoping that the act will be committed by someone else" that *United States v. Daulong*, 60 F. Supp. 235, 236 (W.D. La. 1945), holds outside a federal threat statute. The Court can go further and assume "him" refers to whichever man the Government designates; the statement is still a bare, third-person wish. Resolving every interpretive question in the Government's favor changes nothing, which is the definition of a question of law. No fact a jury could find converts "I wish someone would kill him" into "I will kill him."

## V.     THE GOVERNMENT'S RESPONSE CONFIRMS EACH GROUND.

The Response confirms these grounds on its own terms, through four concessions in the Government's own words: (1) only the Indictment may be considered, "because a motion to dismiss is determined from the face of the indictment," Doc. 41 at 1 n.1; (2) the charged words, standing alone, are "incomprehensible," *id.* at 11, and "nonsensical," *id.* at 10; (3) their meaning "will be decided by the jury," *id.* at 11-12; and (4) criminality depends on "the context surrounding" the words, *id.* at 12.

Taken together, the Government's position is that the Court may consider only the Indictment; that the Indictment's operative words are incomprehensible as written; that their meaning must await a jury; and that even then, criminality turns on context found nowhere in the charging document. That is a description of an indictment that fails to state an offense. An indictment whose operative words the Government concedes are incomprehensible, and whose criminality the Government concedes turns on unpleaded context, does not satisfy *Stock* and *Landham*; and words the Government can construe only by resort to a dictionary and a guess at the pronoun's antecedent are not the "serious expression of an intent to commit an act of unlawful violence to a particular individual" that *Black* requires. 538 U.S. at 359. Finally, the concessions answer the authority question: the Government cannot insist both that only the four corners may be considered and that the dispositive question must await a trial that would supplement them. If the Court is confined to the

Indictment, everything needed to decide this Motion is already before it. And the Government identifies no binding authority to the contrary, conceding that only "dicta" and district-court decisions favor trial. Doc. 41 at 6. Dicta binds no one. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010).

**CONCLUSION**

For these reasons, Ms. Joudeh respectfully requests that the Court dismiss the Indictment. To make the basis of any dismissal unmistakable, she further requests that, pursuant to Federal Rule of Criminal Procedure 12(d), the Court state its essential findings on the record, including that: (i) its ruling rests solely on the face of the Indictment; (ii) all factual allegations in the Indictment were accepted as entirely true; (iii) the Court assumed, *arguendo*, the Government's proposed reading of the charged phrase and its proposed referent for "him"; (iv) no disputed question of fact was resolved; and (v) the dismissal rests on questions of law: the scope of § 875(c) as a matter of statutory interpretation and/or the protection of the First Amendment.

Respectfully submitted,

/s/ Sufia M. Khalid

Sufia M. Khalid
Deputy Director, Nat'l Security Criminal
Defense Center
Muslim Legal Fund of America
100 N. Central Expy, Suite 1010
Richardson, TX 75080

(972) 914-2507
Sufia.khalid@mlfa.org
*Counsel for Defendant Neda Joudeh*

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2026, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send a notice of electronic

filing to all counsel of record.

/s/ Sufia M. Khalid
Sufia M. Khalid