UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                     CASE NO. 6:25-cr-290-CEM-DCI

NEDA JOUDEH

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR DISCOVERY IN SUPPORT OF HER SELECTIVE-PROSECUTION CLAIM**

The United States respectfully opposes Defendant's Motion for Discovery in Support of Her Selective-Prosecution Claim ("Motion") (Doc. No. 33) and, in support, states the following:

**FACTUAL AND PROCEDURAL BACKGROUND**

On or about June 22, 2025, Instagram user "falasteen8090" posted the Instagram comment "I wish someone would in alive him", pictured below:

The comment "I wish someone would in alive him" ("Charged Statement") was reported to the U.S. Marshal Service, which investigated the Charged Statement as a threat against the judge referenced in the post by user "qasimrashid". Images of the Charged Statement were saved.

As part of the investigation, other Instagram comments by "falasteen8090" were examined. Those comments included "falasteen8090" posting "Iran please hit their news channels so we stop hearing people like this" and "Alhamdulilah"[1] as a comment on purportedly Iranian-bombed premises, pictured below:



---

[1] On information and belief, this post is an Arabic phrase used to express gratitude, thankfulness, and recognition of God's blessings.



It is not evident that J.B. or anyone other than law enforcement noted the posts above. They were not used in search warrants or other matters in this case.

Between June 22, 2025 and June 23, 2025, Deputy U.S. Marshal ("DUSM") Ron Lindback reviewed the posts then-available in the same thread as the Charged Statement. By that time, the Charged Statement had already been deleted. DUSM Lindback documented the comments present during his review that, in his opinion, he viewed as the worst. There were two posts DUSM Lindback highlighted, one from user "ferdnasty" which read, "Dear Iran, start with Florida first. And wherever [P.B.] and this professor lives. Thank yew." There was another comment by user "maya_nm_11", which read, "Hope something terrible happens to the POS who wrote it and I hope something terrible happens to the POS who graded it."

3

On or about June 25, 2025, investigators tentatively identified the user of Instagram account "falasteen8090" as Defendant. It was at that same time that the two posts pictured above were communicated to DUSM Lindback.

On June 27, 2025, a judicial security inspector in Illinois investigated an address associated with Defendant and attempted to interview Defendant. The inspector learned from Defendant's father that Defendant was living in Austin, Texas.

On or about June 27, 2025, DUSMs located Defendant at her residence in Austin, Texas. The DUSMs were able to speak with Defendant regarding the Charged Statement. Defendant was cooperative and admitted she wrote the Charged Statement. Defendant also admitted the phrase "in alive" in the Charged Statement was supposed to read "un alive". Defendant admitted she made the Charged Statement in anger but stated she had no intention of acting on the Charged Statement or traveling to Florida. Defendant showed the DUSMs the Instagram account "falasteen8090" on her phone.

On August 7, 2025, DUSM Lindback swore to an Affidavit in Support of an Application for a Search Warrant ("SW Affidavit") directed to Instagram to search and seize information associated with "falasteen8090". *See* (Doc. No. 32-1). In the SW Affidavit, DUSM Lindback incorrectly asserted "[J.B.] and his family are Jewish and concerned that the comment from Falasteen8090 was also partially motivated by antisemitism." *See* (*Id.*, ¶16). Additional investigation has revealed that J.B. and his family are not Jewish, and the foregoing statement was incorrect. Additionally, J.B.

4

has stated that voicemails were received through the University of Florida faculty voicemail, and that those voicemails were nasty and not forwarded to the USMS. Those facts have been disclosed to Defendant through discovery.

On or before October 23, 2025, Instagram produced its records pursuant to the search warrant. The records received pursuant to the search warrant have been produced to Defendant in discovery. Law enforcement did not find any material in the Instagram returns that were believed to constitute a true threat, and the Charged Statement was not present in the materials produced by Instagram.

On November 17, 2025, the Grand Jury returned the Indictment (Doc. No. 1), charging Defendant with a single count of Interstate Transmission of a Threat to Injure, in violation of 18 U.S.C. § 875(c). (*Id.*). Defendant pled not guilty, and the case has progressed.

The United States has produced reports, images, email communications, and digital data to Defendant in discovery. The discovery productions included the reports detailing the facts described above. The United States has also produced the grand jury testimony of DUSM Lindback to Defendant as *Jencks* material, well in advance of trial. The United States has also produced reports regarding contact with J.B. related to the instant case, including the report of a July 8, 2026 interview with J.B. regarding this case.

On July 6, 2026, Defendant filed its Motion (Doc. No. 33), seeking five categories of items. (*Id.*). As part of the Motion, Defendant presented purported threats from five other individuals who have not been prosecuted. (*Id.*). The posts

5

highlighted by Defendant also appear to mostly be on different threads and/or platforms than the Charged Statement. The comments presented by Defendant also do not appear in the materials produced by Meta in response to the Instagram search warrant.

The United States now responds in opposition to the Motion.

## MEMORANDUM OF LAW

Defendant's Motion should be denied because Defendant cannot establish the elements of selective prosecution. Defendant's Motion argues that it is not asserting a selective prosecution argument but just requesting discovery. However, in *United States v. Armstrong*, the U.S. Supreme Court stated: "The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." *United States v. Armstrong*, 517 U.S. 456, 468, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). In order to obtain discovery in support of a claim of selective prosecution, a defendant must provide some evidence tending to show the existence of the essential elements of the defense. *See United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (citing *Armstrong*, 517 U.S. at 468).

Defendant has failed to do so.

### I.    Defendant has not met her burden regarding selective prosecution.

"It is axiomatic that with limited law enforcement resources, the Government is unable to prosecute every crime that is committed." *United States v. Brantley*, 803

6

F.3d 1265, 1271 (11th Cir. 2015). Decisions regarding which crimes to prosecute are entrusted to the Executive Branch by the Constitution, which is charged with seeing that the Nation's laws are enforced. *Id.* (citing U.S. Const., Art. II, § 3). "The judiciary cannot interfere with a prosecutor's exercise of charging discretion, except in narrow circumstances where it is necessary to do so in order to discharge the judicial function of interpreting and applying the Constitution." *Brantley*, at 1271 (quoting *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000)).

Under the Due Process Clause of the Fifth Amendment, the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification. *Brantley*, at 1271. However, a presumption exists that a prosecutor has not violated equal protection principles, and a defendant challenging her conviction on this ground must satisfy a "demanding" burden to establish she is being selectively prosecuted. *Id.*

A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. *Armstrong*, 517 U.S. at 463. A selective-prosecution claim asks the court to exercise judicial power over a "special province" of the Executive. *Id.*, at 464 (citing *Heckler v. Chaney*, 470 U.S. 821, 832, 105 S.Ct. 1649, 1656, 84 L.Ed.2d 714 (1985)). The Attorney General and United States Attorneys retain "broad discretion" to enforce the Nation's criminal laws. *Armstrong*, 517 U.S. at 464 (citing *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524,

1530-1531, 84 L.Ed.2d 547 (1985); *United States v. Goodwin*, 457 U.S. 368, 380, n. 11, 102 S.Ct. 2485, 2492, n. 11, 73 L.Ed.2d 74 (1982)).

A defendant asserting she was selectively prosecuted must show that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose. *Id.* In other words, a criminal defendant asserting selective prosecution must establish two elements: (1) the discriminatory effect prong of this test requires a showing that similarly situated individuals were not prosecuted, and (2) that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. *Id.* (citing *Wayte*, 470 U.S. at 610).

In order to obtain an evidentiary hearing on a selective prosecution claim, the defendant must present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution. *Brantley*, at 1271.

**A. First Element of Selective Prosecution – Discriminatory Effect – Similarly Situated to Comparator**

The first element of the selective prosecution argument requires a defendant to show she is similarly situated to a purported comparator. The Eleventh Circuit has stated "a 'similarly situated' person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant – so that the prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement

8

plan – and against whom the evidence was as strong or stronger than that against the defendant." *Id.*, at 1271 – 1272; *see also*, *Jordan*, 635 F.3d at 1188. In all but an exceedingly narrow number of cases, a court is not free to second-guess the prosecutor's exercise of charging discretion. *Brantley*, at 1272. "[R]aw statistics regarding overall charges say nothing about charges brought against similarly situated defendants." *Jordan*, at 1188 (quoting *United States v. Bass*, 536 U.S. 862, 864, 122 S.Ct. 2389, 153 L.Ed.2d 769 (2002)).

None of the posters presented by Defendant in her Motion are similarly situated.[2] The elements of the offense with which Defendant is charged are:

(1) the Defendant knowingly sent a message in interstate or foreign commerce containing a true threat to kidnap any person or injure the person of another; and

(2) the Defendant sent the message with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat.

*See* Pattern Crim. Jury Instr. 11th Cir. OI O30.3 (2025)

Unlike Defendant, "@Will422952" did not direct his (admittedly terrible) statement to an individual but to an entire people. This statement was insulting, but also unachievable, which puts it closer to the realm of protected speech than the Charged Statement.

---

[2] Defendant's Motion ignores the individuals engaged in similar conduct to her who have been prosecuted, as discussed in the Government's Response (Doc. No. 41) to Defendant's Motion to Dismiss. *See, e.g.*, *United States v. Biddle*, No. 6:25-cr-162-RBD-DCI, 2025 WL 2936417 (M.D. Fla. Oct. 9, 2025); *United States v. Joseph Rocco Giancola*, No. 2:25-cr-238-KCD-NPM (M.D. Fla. Feb. 15, 2026), Order (Doc. No. 36); and *United States v. Segari*, No. 5:25-cr-456-KKM-AAS, 2026 WL 653757 (M.D. Fla. March 9, 2026).

User "@_andrei9904" wrote "The world would be a better place without him. Anyone in Florida with a registered firearm should know this." This statement did not include the direct exhortation of the Charged Statement, and, in any event, there is no record of an admission of that user making the post in anger like with Defendant. There is no identifying information about user "@_andrei9904" to indicate whether the poster is male or female, or any demographic information. Additionally, Defendant's deletion of the Charged Statement in less than a day creates an inference that Defendant knew the Charged Statement was different and thus that Defendant had knowledge the Charged Statement would be viewed as a true threat. The timestamp on the image in Defendant's Motion of the post by user "@_andrei9904" would defeat such an inference for said user.

The purported statement by user "@HerQueen" that "the only good nazi is a dead nazi" can similarly not been seen as a true threat, in that it did not convey that the speaker meant to commit an act of unlawful violence, rendering this individual differently situated from Defendant.

The complete statement from user "Mary Miller" was "What a gross loser and freak. I hope he gets eaten by an alligator." This statement is different from the Charged Statement because it includes a sentence describing the user's disgust with a person and changes the way this statement would be viewed by a reasonable person. Additionally, the hope that "…he gets eaten by an alligator" possessed a degree of imagery and hyperbole utterly lacking from the Charged Statement. The imagery and

10

hyperbole present in the statement by "Mary Miller" render it less likely to be viewed as a true threat by a reasonable person.

User "@vvvadderrr" is the closest to Defendant, but even the comment "Go beat his ass" suffers from the inference created by Defendant's quick deletion of the Charged Comment before she was confronted by DUSMs. It is also not evident that the comment by user "@vvvadderr" was ever brought to the attention of the USMS and does not appear in the materials provided by Meta pursuant to the search warrant.

The other statements referenced in the Motion are also different from the Charged Statement in that they cannot be seen as true threats by a reasonable person.

**B. Second Element of Selective Prosecution – Discriminatory Purpose**

Apart from failing to show she was similarly situated to anyone, Defendant has to establish that the decision to prosecute her, and not anyone else, was based on an unjustifiable standard such as race, religion, or other arbitrary classification. *See Brantley*, 803 F.3d at 1273 (citing *Armstrong*, 517 U.S. at 464). There is nothing in the Constitution that prohibits a prosecutor from considering the circumstances of a crime in making a charging decision. *Brantley*, at 1274. There is also nothing that prevents the Executive Branch from treating alleged violence or threats towards or involving government personnel differently than threats against others. *See, e.g., Brantley*, at 1274.

It is undisputed that the Charged Statement was reported to the USMS by a federal judge, who viewed the Charged Statement as a threat against him. The

11

investigation grew from that fact. Defendant's religion was superfluous to that understanding.

Defendant admitted she made the post and was angry when she did. Her deletion of the post, prior to being met by DUSMs, also creates the inference that Defendant knew her Charged Statement would be viewed differently than others. The mistake in the SW Affidavit regarding the judge's religious affiliation does not support Defendant's argument there was a discriminatory purpose in this prosecution of her. It is clear that the motivating purpose of this prosecution was the perceived target of the Charged Statement, a federal judge, and not Defendant's religion.

Even assuming, *arguendo*, Defendant could show that she was similarly situated to any of the five other individuals whom she highlights, she cannot show any discriminatory intent or purpose by the government because the government was not aware of the posts in Defendant's Motion prior to Defendant's Motion.

As noted above, the Defendant presented these purported threats from five other individuals for the first time in her motion. These posts were not obtained nor preserved by the government and they were not produced in discovery by either party. The posts presented by Defendant do not appear in the materials produced by Meta pursuant to the Instagram search warrant. Thus, neither the investigating agents nor the prosecutor could have selected Defendant's threat and ignored similar threats in a discriminatory manner, because the government was unaware of those other posts when Defendant was charged.

## CONCLUSION

Defendant has a high bar to clear to be entitled to the items she requested. The United States submits that for the foregoing reasons, she has failed to meet that bar.

WHEREFORE, the United States requests that this Court deny Defendant's Motion for Discovery in Support of her Selective-Prosecution Claim.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney


By:     /s/ Patrick M. Flanigan
        Patrick M. Flanigan
        Assistant United States Attorney
        Florida Bar No. 47703
        400 W. Washington Street, Suite 3100
        Orlando, Florida 32801
        Telephone:  (407) 648-7500
        Facsimile:   (407) 648-7643
        E-mail: patrick.flanigan@usdoj.gov

**U.S.A. v. JOUDEH**                                    **Case No. 6:25-cr-290-CEM-DCI**

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2026, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a

notice of electronic filing to the following:

Fritz Scheller, Counsel for Defendant; and
Sufia M. Khalid, Counsel for Defendant.

/s/ Patrick M. Flanigan
Patrick M. Flanigan
Assistant United States Attorney
Florida Bar No. 47703
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:    (407) 648-7643
E-mail: patrick.flanigan@usdoj.gov

14